# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FRITZ L. FOX,             )
                                 )
          **Plaintiff,**       )
                                 )     **No. 14 C 4432**
          **v.**                )
                                 )     **Magistrate Judge**
**CAROLYN W. COLVIN, Acting**   )     **Maria Valdez**
**Commissioner of Social Security,[1]** )
                                 )
          **Defendant.**      )
                                 )

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Fritz L. Fox's claims for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment [Doc. No. 18] is denied.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On October 25, 2011 Plaintiff filed a claim for Disability Insurance Benefits, alleging disability since December 1, 2010. The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

Administrative Law Judge ("ALJ"), which was held on March 4, 2013. Claimant personally appeared and testified at the hearing and was represented by counsel. Vocational Expert Grace Gianforte also testified.

On April 26, 2013 the ALJ denied Claimant's claim for Disability Insurance Benefits, finding that he was not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND[2]

### A. <u>Background</u>

Claimant was born on July 14, 1969 and was 43 years old at the time of the ALJ hearing. Plaintiff's "date last insured"—the date by which he must have proven disability in order to be eligible for benefits—was December 30, 2010. Although he was unable to remember the exact date, Plaintiff stated that he had been shoveling snow in sometime in mid-December 2010 when he hurt his back. (R. 14-15.) He was unable to reach his doctor due to the holiday, and—when he finally was able to be seen in January—his doctor sent him to the emergency room. (R. 15.)

### B. <u>Medical Evidence</u>

Plaintiff underwent an MRI on January 5, 2011. The MRI showed moderate to severe degenerative disk disease, along with intervertebral disk space loss, bilateral facet hypertrophy, and moderate spinal canal stenosis, as well as

---

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

moderate-to-severe right and moderate left foraminal stenosis. (R. 264.) On January 11, 2011, Plaintiff saw orthopedic surgeon Dr. Mark Chang. Dr. Chang noted that Plaintiff was in obvious discomfort, and that his range of motion in his back was limited due to pain. (R. 219.) Plaintiff also exhibited mild weakness in his left ankle, as well as decreased sensation in his left foot. *Id.* Dr. Chang recommended that Plaintiff be admitted to the hospital for further evaluation, after which a plan would be formulated. *Id.*

Plaintiff was admitted to the hospital due to the pain and weakness in his left leg. (R. 325.) On January 15, 2011, Plaintiff underwent a laminectomy, partial facetectomy, foraminotomy and discectomy**.** (R. 329.) At the time of surgery, he reported an eight-month history of gradual lower back pain that had "gotten worse over the last 2 weeks." (R. 329.) At the time of the procedure, Plaintiff reported "extreme pain, difficulty walking and weakness with the left leg." *Id.* During the surgery, Dr. Chang noted that the nerve root was "markedly pinned," and that "there was a moderate-sized contained disk herniation." (R. 330.) Disk material was removed, and the operation was completed. *Id.* After the procedure, Plaintiff developed an infection at the surgical site, and underwent surgical debridement of the wound. (R. 297.) Dr. Evans noted that, at that time, Plaintiff was "quite severely incapacitated and can only walk a few feet and can only stay in the upright position for a few minutes," although he seemed to have "improved after being given an injection of Decadron." (R. 326.)

In February 2011, Plaintiff returned for a follow-up with Dr. Chang. At that appointment, Plaintiff reported minimal pain in his back, although he continued to experience numbness and slight weakness in his left leg. (R. 223.) Dr. Chang recommended that Plaintiff begin physical therapy, and that he was able to "increase activity as tolerated." *Id.* The following week, Plaintiff again reported numbness in the leg, but "little pain." (R. 224.) In March, Plaintiff reported that he was "doing better," and that he had only "slight pain in his lower back." (R. 225.) Dr. Chang concluded that Plaintiff had tolerated the home physical therapy and could now advance to outpatient physical therapy, and that he was able to "sit and work as tolerated." (R. 225.)

Plaintiff began physical therapy in March 2011. In the treatment notes, Plaintiff reported that he could stand for only 30 minutes, and sit for one hour. (R. 241.) Plaintiff also reported that he would sleep for less than three hours maximum per night, as his pain disturbed him. *Id.* On April 28, after 18 sessions of physical therapy, Plaintiff had not met his goals of sitting and standing up to 2 hours, lifting up to 20 pounds, and returning to work, among others. (R. 243.) On the same day, Plaintiff also completed a questionnaire regarding his back pain. (R. 248, 251.) In the questionnaire, Plaintiff stated that his pain medication provided him complete relief from his pain. (R. 248.) It was painful to perform personal care activities and Plaintiff needed help doing so, but he was nonetheless "able to manage most of [his] personal care." *Id.* The pain prevented him from lifting heavy weights, but Plaintiff could "manage light to medium weights if they [were] conveniently positioned." *Id.*

He stated that his pain prevented him from walking for more than one-half mile, and that he was able to sit for more than one hour. *Id.*

In July 2011, Plaintiff again followed up with Dr. Chang. Dr. Chang reported that Plaintiff "continu[ed] to have a lot of lower back pain and still has persistent weakness with the left leg." (R. 354.) However, Dr. Chang felt that Plaintiff could still improve, and that he would benefit from more physical therapy. *Id.*  However, Dr. Chang recommended that Plaintiff seek treatment at a different physical therapy facility, as Plaintiff did not "feel that he has been able to get adequate attention and treatment at the physical therapy office" at which he first received treatment. (R. 354.)

In September 2011, Plaintiff began physical therapy at a new location. (R. 365.) He confirmed that "he did not feel that he got the proper treatment or length of treatment" at his prior therapist, and that this lack of attention had precipitated the change. *Id.* At this appointment, Plaintiff reported that the "pain gets up to an 8/10 and is aggravated by sitting for a long period[s] of time, walking, going up and down the stairs, squatting, lifting or carrying anything, bending forward and daily activities." *Id.* However, Plaintiff reported that the pain was "at a 3/10 pre- and post-physical therapy initial evaluation." *Id.* While Plaintiff continued to report that he had numbness in his left leg, the numbness had improved since his surgery. *Id.* Despite the problems, Plaintiff's prognosis was reported as good. (R. 366-67.)

At his October appointment, Plaintiff reported pain at a 2/10 level. (R. 368.) He continued to have problems with his gait and used a can while in the

community; however, he did not use his cane at the therapy session. *Id.* Plaintiff had demonstrated "slight improvement in the lower extremity strength and ankle strength and slight improvements in hamstring flexibility." *Id.* He was able to "walk better during therapy sessions," but was recommended to continue to use the cane in the community. *Id.* Plaintiff complained of "increased right knee pain and weakness." *Id.* Although plaintiff "appear[ed] to be motivated during therapy sessions," the therapist found that "the objective findings do not support this and he made minimal gains during the initial first month of therapy." (R. 368-69.)

On November 7, 2011, Plaintiff "report[ed] increased soreness due to the weather." (R. 341.) He reported pain on a 3/10 prior to physical therapy, and 2/10 afterward. *Id.* The therapist noted that, "[s]ince previous assessment, the patient has demonstrated a marked improvement in hamstring flexibility, hip strength, and knee strength, along with activity tolerance." *Id.* While plaintiff was still using a cane to walk, he reported "improved functional gains in the past month," that he did not avoid using stairs," and that—while he took his medication regularly—"he sometimes does not need it during the day." (R. 341-42.)

On November 17, 2011, state agency physician Dr. James Hinchen completed a medical evaluation of Plaintiff's claim. Dr. Hinchen concluded that Plaintiff's claim should be denied because there was insufficient evidence of disability prior to Plaintiff's date last insured. (R. 402.) Because of this conclusion, Dr. Hinchen did not evaluate whether Plaintiff's impairments met or equaled an impairment listed

in 20 C.F.R. Pt. 404, Subpart P., App. 1, and did not evaluate Plaintiff's residual functional capacity.

On November 22, 2011, Plaintiff returned to Dr. Chang. Dr. Chang noted that "[p]hysical therapy is helping but there is still some difficulty with pain." (R. 408.) Dr. Chang noted that "[f]unction is very limited," and that Plaintiff had "difficulty tolerating activities for more than a few minutes at a time," and that he "[c]ontinues to require pain medications." *Id.* Dr. Chang's examination showed "moderate diffuse tenderness" and a limited range of motion in the lower back." (R. 408.) Dr. Chang "validate[d] the patient remains completely disabled," but recommended additional physical therapy and a follow-up in three months. *Id.*

On February 2, 2012, Dr. Reynaldo Gotanco—as second state agency physician—reviewed Dr. Hinchen's earlier evaluation. Dr. Gotanco concluded that, while additional information had been submitted as to Plaintiff's current condition, that information did not provide sufficient evidence from before his date last insured; accordingly, Dr. Gotanco affirmed Dr. Hinchen's prior determination. (R. 420.) As with Dr. Hinchen, Dr. Gotanco did not evaluate Plaintiff's impairments in relation to the Listings, nor did he express an opinion as to Plaintiff's residual functional capacity.

In September 2013, Dr. Evans completed a questionnaire regarding Plaintiff's functional capacity, which consisted largely of one-word answers to the printed prompts. Dr. Evans diagnosed Plaintiff with "L-disc disease," described his prognosis as "fair," (R. 473), and described his symptoms—entirely—as "pain." (R.

474.) When asked to identify the laboratory and test results supporting his diagnosis, Dr. Evans said simply "Hx." *Id.* The precipitating factors leading to pain were described as "sit, stand." (R. 475.) Dr. Evans rated the severity of Plaintiff's pain as 7/10, his level of fatigue as 5/10. *Id.* However, Dr. Evans answered "yes" when asked if he had "been able to completely relieve the pain with medication without unacceptable side effects." *Id.* Nonetheless, Dr. Evans estimated that Plaintiff could sit or stand and walk for only 1 hour per day, *id.*, and indicated that Plaintiff could not sit continuously in a work setting. *Id.* Dr. Evans concluded that plaintiff could never lift or carry any weight at all and that he had significant limitations in reaching, handling, fingering and lifting due to his spine pain, (R. 476), and that Plaintiff was "essentially precluded" from grasping, fine manipulation, and reaching with both arms. (R. 476-77.) Dr. Evans also estimated that Plaintiff would need to take breaks three times per hour during the workday. *Id.* Dr. Evans, however, provided no further indication of how any of his conclusions had been drawn or of the medical evidence on which he had based them.

## C.     **Vocational Expert Testimony**

The ALJ asked Vocational Expert ("VE") questions about a hypothetical person with the same age, education, and work experience as Plaintiff. The ALJ first limited the hypothetical person's residual functional capacity ("RFC") by restricting him to sedentary work involving no climbing of ladders, ropes, or scaffolding, and to only occasional crouching, balancing, kneeling, stooping, crawling, or climbing ramps and stairs. (R. 29.) The VE responded that the

individual could perform Plaintiff's past work as a loan officer and financial center manager. (R. 29.) The answer did not change if the individual required a cane to walk. *Id.*

The ALJ then asked whether the VE's answer would change if the individual had to lay down for 50 percent of the workday. *Id.* The VE responded that the individual could not perform any of plaintiff's past work, and could not perform any other work in the national economy. (R. 29-30.) The answer was the same for an individual who was off task 30 percent of the day, and who needed to change positions frequently because of pain. (R. 30.) This also applied to an individual who would miss three days of work per month. *Id.*

### D. ALJ Decision

The ALJ then followed the five-step process for determining disability. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 1, 2010. (R. 40.) At step two, the ALJ found that Plaintiff did have the severe impairments relating to his back injury and obesity. *Id.* Contradicting the state agency physicians, the ALJ—"[g]iving the claimant the benefit of the doubt"—credited his testimony that his back injury had arisen prior to the date last insured, and therefore that he could potentially qualify as disabled under the Act. (R. 42.) However, the ALJ concluded at step three that the impairments, alone or in combination, did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P., App. 1. (R. 41.) The ALJ then determined that Plaintiff retained the RFC to perform sedentary

work, except he was unable to climb ladders, ropes, or scaffolds, but could occasionally balance, stoop, knee, crouch, crawl, and climb ramps or stairs. *Id.* At step four, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform his past work of loan officer and financial center manager. (R. 45.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act as of December 31, 2010, his date last insured. *Id.*

## DISCUSSION

### I.  ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work?  20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389

(7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps one through four. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106–07 (2000). In this circumstance, the district court reviews the decision of the ALJ. *Id.* The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching that decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales,* 402 U.S. 389, 401 (1971), but a "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making

independent credibility determinations." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008).

III.  **ANALYSIS**

   A.  <u>**The ALJ's Step Three Determination**</u>

Plaintiff challenges the ALJ's conclusion at step three that his impairments did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P., App. 1. In her analysis, the ALJ stated that he had considered the Listings and concluded The Seventh Circuit has "held that an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Here, a remand is required because the ALJ's analysis was perfunctory, and because it lacked a sufficient basis in the record. In rendering her step three conclusion, the ALJ's entire analysis was to "conclude that the claimant does not manifest clinical signs and findings that meet or equal the specific criteria of any of the listings," and to rely on the opinions of the state agency physicians in reaching that conclusion. The ALJ, however, did not identify any Listing specifically, as the Seventh Circuit has cautioned against. Furthermore, the ALJ's reliance on the opinions of the state agency physicians was misplaced. But these physicians did not in fact analyze the evidence related to the Listings, instead finding that there was

insufficient evidence to do so. In drawing the conclusion that Plaintiff's impairments did not meet or equal a Listing by herself, the ALJ violated the Administration's "longstanding policy [which] requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence . . . must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180, at *3. Given that the ALJ's conclusion that Plaintiff's impairments did, in fact, begin prior to the date last insured contradicted the state agency physicians' conclusions that there was insufficient evidence to reach that conclusion, there was no medical source statement regarding the Listings for the ALJ to rely on, in violation of the Ruling. *See Strobach v. Colvin*, No. 12 CV 50012, 2014 WL 1388285, at *11 (N.D. Ill. Apr. 9, 2014) ("Ultimately, the ALJ alone cannot determine the onset date of the Claimant's disability and whether he was disabled as of the date last insured.").

Compounding this error, there was evidence in the record close to Plaintiff's date last insured which bears on this question, including evidence of nerve root impingement, (R. 325), leg weakness, *id.*, (R. 353, 354, 408), and difficulty squatting, sitting, and walking. (R. 365, 368.) *See* 20 C.F.R. Pt. 404, Subpart P., App. 1, § 1.04. But, in simply relying on the state agency physicians' conclusion, the ALJ but did not evaluate any of this evidence in relation to the Listings. In this case, the Court is "unable to discern from the ALJ's scant analysis whether she considered and dismissed, or completely failed to consider" the pertinent evidence in the record, which is troubling because the ALJ "never sought an expert's opinion as

to whether any of the evidence could support a finding of equivalency." *Minnick*, 775 F.3d at 936. On remand, the ALJ should solicit the opinion of a medical expert as to whether Plaintiff's impairments met or equaled a Listing as of the date last insured, and should provide a fuller analysis of the Listing in relation to Plaintiff's impairments.

### B.    Determination Of Plaintiff's RFC

Plaintiff also contests the ALJ's determination of his RFC in various ways. Plaintiff argues first that the ALJ erred because he ascribed limitations to Plaintiff's RFC during the critical time which were not stated in a physician's opinion. As discussed above, the two state agency physicians—Drs. James Hinchen on November 17, 2011 (R. 402), and Reynaldo Gotanco on February 2, 2012— concluded that there was insufficient evidence relating to Plaintiff's impairments prior to the date last insured to determine any potential disability. (R. 402, 420.) In contrast, on November 22, 2011 Plaintiff's treating physician Dr. Mark Chang "validate[d] that [Plaintiff] remains completely disabled,"[3] but did not indicate the basis for that conclusion in the treatment note. (R. 408.) Similarly, in April of 2013 Dr. Evans also concluded that Plaintiff was functionally precluded from all work. In contrast to Dr. Chang, Dr. Evans submitted an assessment of Plaintiff's functional capacity, in which Dr. Evans concluded that Plaintiff could sit and stand or walk for a maximum of one hour per day, (R. 475), and that it was not "medically

---

[3] Although Dr. Chang's note implies that he had earlier opined as to Plaintiff's disability, Plaintiff does not point to such an assertion from Dr. Chang, and the Court cannot find such an assertion after its own review of the record. It is possible that this assertion relates to Plaintiff's initial statement to Dr. Chang on January 11, 2011, where he "report[ed] that for the past week and a half essentially he has been disabled." (R. 348.)

recommended" for Plaintiff to "sit continuously in a work setting." *Id*. Dr. Evans's assessment also stated that Plaintiff would need to frequently "get up and move around," and that Plaintiff was incapable of carrying any amount of weight. (R. 475-76.).

The ALJ, rather than finding the evidence insufficient to credit Plaintiff's impairments as the state agency physicians had done, instead determined that Plaintiff had the residual functional capacity as of his date last insured to perform sedentary work. *See* 20 C.F.R. § 404.1567(a). In doing so, the ALJ declined to give the opinions of Drs. Chang and Evans controlling weight. She found that Dr. Chang's conclusion as to disability was reserved to the Commissioner and unsupported by any medical findings, (R. 44), and that there was no indication from Dr. Evans that the limitations described related to the period at issue, prior to December 31, 2010, when Plaintiff's insured status expired. (R. 45.) Furthermore, the ALJ also noted that—other than the fact of Plaintiff's surgery—Dr. Evans did not provide any support in the medical record for his findings, another appropriate consideration, and that Dr. Evans's opinion was inconsistent with Plaintiff's performance in physical therapy and "normal neurological findings," although the ALJ did not elaborate further. *Id*.

It is true that Dr. Chang opined as to Plaintiff's functional abilities after the date last insured, and that "[a]n opinion of a treating physician that a claimant is disabled after the date last insured is not relevant to the determination of disability insurance benefits." *Burke v. Colvin*, No. 11 C 50001, 2013 WL 5288155, at *11

(N.D. Ill. Sept. 17, 2013) (citing *Meredith v. Bowen*, 833 F.2d 650, 655 (7th Cir.1987) and *Million v. Astrue*, 260 F. App'x 918, 921–22 (7th Cir.2008)). However, the ALJ is still bound to consider all relevant evidence, even evidence post-dating the date last insured. *See Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010). Here, the ALJ found that there was no indication that the treating physicians were rendering their opinions as to Plaintiff's condition prior to his date last insured and discounted them on those grounds. But Dr. Chang had treated Plaintiff since before the alleged onset date, (R. 184), and Dr. Chang had done so continuously since shortly after his date last insured. (R. 348.) Furthermore, while these opinions were rendered after the date last insured, they were not so remote in time, and related to impairments which were present prior to the date last insured. *Cf. Shideler v. Astrue*, 688 F.3d 306, 309-10 (7th Cir. 2012) (date last insured 2000 and gap in treatment until 2006); *Milliken v. Astrue*, 397 F. App'x 218, 224-25 (7th Cir. 2010) (date last insured in 2002 and symptoms related to multiple sclerosis exacerbation in 2005). An ALJ may be required to recontact a physician where the underlying basis for his or her opinion is not readily discernible. *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). In this case, given that the ALJ was unclear as to the time period for which the opinions related, and given the temporal connections discussed above, the ALJ should contact Drs. Chang and Evans as to the basis for their findings given that she found the recommendations unclear as to the time period to which they related.

Plaintiff also argues that the ALJ erred when assessing the impact of his symptoms on his RFC.[4] In doing so, the ALJ must "consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2; *see* 20 C.F.R. § 404.1529. In doing so, the ALJ must "adequately explain his . . . finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (quoting *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008)). A reviewing court "will only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). However, an ALJ must "consider all of the available evidence," *see* 20 C.F.R. § 404.1529(a), and must "explain her decision in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir.2011)).

In this case, the Court agrees with Plaintiff that the ALJ's determination as to the impact of Plaintiff's symptoms was not complete. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically

---

[4] After briefing in this case, the Social Security Administration Social Security Ruling 16-3p, which supersedes SSR 96-7p and removes the term "credibility" from the analysis of the impact of a claimant's symptoms on her RFC. *See* SSR 16-3p, 2016 WL 1119029, at *1-2. However, as SSR 16-3p is a clarification of—rather than change to—the law, and the contents of the two rulings overlap significantly; the Court will therefore evaluate Plaintiff's case in light of the new guidance. *See Lockwood v. Colvin*, No. 15 C 192, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016).

determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In this case, the ALJ found that Plaintiff had no limitations with regard to the amount of time that he was able to sit during the workday, and that Plaintiff was capable of performing sedentary work, "which requires sitting for 6 hours and standing and/or walking for 2 hours during an 8–hour workday." *Collins v. Astrue*, 324 F. App'x 516, 517 (7th Cir. 2009) (citing 20 C.F.R. § 404.1567(a) and SSR 83-10, 1983 WL 31251, at *5). However, Plaintiff testified that he was uanable to sit or stand for more than 20 minutes at a time, and that he would have to lay down periodically for a period of one or two hours during the workday. (R. 17.) Furthermore, in his initial consultation with Dr. Chang in January 2011, Plaintiff reported that—while he had difficulty both sitting and standing, sitting was "worse." (R. 219.) Limitations on sitting were also proposed by both his treating physicians, Drs. Chang, (R. 354), and Evans, (R. 475), and Plaintiff's physical therapy records also indicated that he was unable to sit for more than 30 minutes at a time during the course of his physical therapy. (R. 227, 366.) The physical therapy records also indicate that Plaintiff continually failed to meet his goal of being able to sit, stand, and ambulate for two hours. (R. 229, 241, 242, 261.)

In her decision, however, the ALJ did not discuss any of the evidence regarding Plaintiff's inability to sit, nor did she rely on any medical opinion as to that ability, and simply concluded that—by inference—Plaintiff's ability in this area was unlimited. This was improper, as "[t]he adjudicator must consider all

allegations of physical and mental limitations or restrictions . . . ." SSR 96-8p, 1996 WL 374184, at *5. In this case, the ALJ's failure to address the evidence related to Plaintiff's alleged inability to sit during the workday is error. *See Liggins v. Colvin*, 593 F. App'x 564, 568 (7th Cir. 2015); *Eakin v. Astrue*, 432 F. App'x 607, 611 (7th Cir. 2011) (ALJ's error "compounded by" failure to address claimant's "testimony about limitations arising from radiating pain in her hip, about her inability to sit and stand for extended periods of time, and about the frequency with which she needed to alternate positions"); *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (remanding where ALJ provided no narrative discussion of how RFC was determined). Furthermore, the VE testified that, if a person were off-task 30 percent of the workday or needed to frequently change positions, this would preclude all work. (R. 30.) In these circumstances, remand is therefore appropriate for the ALJ to address the evidence regarding Plaintiff's ability (or lack thereof) to sit and stand.

Similarly, Plaintiff also argues that the ALJ erred by failing to assess Plaintiff's claims that fatigue limited his RFC. [Doc. No. 14 at 15-17.] In her decision, the ALJ explicitly noted Plaintiff's claims of fatigue and drowsiness, linking them to Plaintiff's medications and finding the symptom contradicted by Plaintiff's statements that he did not always take his medications. (R. 44.) At hearing, however, Plaintiff stated that, his pain resulted in problems sleeping, and that he usually only slept for three hours per night, and four to five hours per day total. (R. 19, 24.) As a result, "[a]t some point during the day everyday," he was

required "to lie down for a minimum of an hour to two hours." (R. 17.) He had reported these concerns to his physicians and physical therapists throughout the course of his treatment. (R. 219, 241, 258, 363.) Furthermore, although the ALJ noted that Plaintiff had not reported drowsiness or fatigue to any of his treating physicians in the period prior to his date last insured, or indeed at any time after his recovery from surgery, this isn't correct. Plaintiff in fact mentioned his inability to sleep in his January 2011 consultation with Dr. Chang. (R. 219.) On remand, the ALJ should also address this alleged limitation in greater detail as well. While an ALJ need not rely on a physician's explicit evaluation in crafting an RFC, *see Castile v. Astrue*, 617 F.3d 923, 929-30 (7th Cir. 2010), given that a medical expert should address the record at step three, the expert should also address Plaintiff's residual functional capacity as of the date last insured.

None of this is to say that the ALJ, on remand, must find Plaintiff disabled. The Court is mindful that "the fact that [Plaintiff's] condition may have worsened . . . does not compel the finding that [he] was not disabled prior to her date last insured." *Milliken*, 397 F. App'x at 225. However, based on the reasons described above, further consideration of this case is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment [Doc. No. 18] is denied. The matter is remanded to the Agency for proceedings consistent with this opinion.

**SO ORDERED.**                    **ENTERED:**

**DATE:**   September 1, 2016        _____
                                     **HON. MARIA VALDEZ**
                                     **United States Magistrate Judge**